UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WESTLY T. SIMS, | ) | Case No. 5:05 CV 0708 |
| | ) | |
| Plaintiff, | ) | Judge Peter C. Economus |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| JOHN E. POTTER, | ) | (Regarding Docket Nos. 12, 14, 17, 19, 21) |
| POSTMASTER GENERAL, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Plaintiff Westly T. Sims filed *in forma pauperis* his *pro se* complaint against his former employer, the U.S. Postal Service raising several claims related to his dismissal. This matter is proceeding as claims for discrimination against a handicapped individual and retaliation in violation of the Rehabilitation Act of 1973 (Docket No. 4). Mr. Sims alleges among other things that defendant discriminated against him when he "was removed for receiving services for a mental disability while still in the hospital." (Compl. at 2). He claims he was harassed by denying him "reasonable accommodations upon request by letter in writing dated January 2, 2004" (Compl. at 2). This letter to his supervisor requests a "leave of absence for personal reasons." (Letter from Sims to Miller of 1/2/04 at 1). Sims explains further that he wanted to continue his treatment for alcoholism at the Brecksville VA Center where he was enrolled "when I was awarded my job back and now I wish to finish" Brecksville treatment. Several weeks later the United States Postal Service sent a letter to Mr. Sims dated January 16, 2004 stating it was a notice of removal advising Mr. Sims that he would be removed from the Postal Service effective March 5, 2004 because he violated a "last chance" agreement. The letter also noted that a prior notice of removal was sent to Mr. Sims on December 11, 2000 due to his failure to adhere to the attendance requirements of the

5:05 CV 0708                                                 2

Postal Service and restated the provisions of this last change agreement entered into on June 27, 2003. Mr. Sims claims that he was discriminated against when on March 5, 2004 he was fired for receiving services while still at Akron General Hospital and he claims retaliation against him for filing a wrongful removal complaint with the EEO in February 2000 (Compl. at 1).  Also attached to the complaint is a copy of the U.S. Postal Service EEOC notice dismissing Mr. Sims' formal complaint with the agency.  The notice indicates that Mr. Sims filed the charge with the EEO on February 15, 2005 alleging discrimination based on mental disability (depression) and retaliation when he was removed from his position on March 5, 2005.  The charge was dismissed on February 23, 2005 as untimely and Mr. Sims was advised of the right to sue in federal court.  Mr. Sims did file this action in Federal District Court within 90 days, as advised in the EEO notice.

*Motions to dismiss and for summary judgment:*

The undersigned recommends that summary judgment be entered in favor of defendant and that Mr. Sims' motions for summary judgment be denied.  The undersigned notes that the government has also filed a motion to dismiss (presumably pursuant to Rule 12(b)(6) for failing to state a claim upon which relief can be granted), but the issues in this case turn upon equitable tolling which requires the court to consider matters beyond those presented in the complaint. As Rule 12(b) provides, "[i]f, on a motion asserting the defense number (6) to dismiss for the failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgement and disposed of as provided in Rule 56..." Mr. Sims has not met the requirements of Rule 56(e) because

5:05 CV 0708                                                  3

he has provided neither affidavit or "sworn or certified copies of all papers or parts thereof be referred to in an affidavit." He essentially has attached personnel and medical records in support of his claim for equitable tolling. Nonetheless, granting Mr. Sims' extreme leniency due to his *pro se* status, the undersigned will incorporate these records and other documents into this recommendation.

Under Rule 56 of the Federal Rules of Civil Procedure granting a motion for summary judgment is only proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In determining whether there is a genuine issue of material fact all inferences drawn from the underlying facts contained in affidavits, pleadings, responses to discovery requests, and depositions must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). A court must inquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court may not make credibility determinations or weigh the evidence when ruling on a motion for summary judgment. *Anderson*, 477 U.S. at 255. The burden is upon the movant to demonstrate the absence of a genuine issue of material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979), *cert. dismissed* 444 U.S. 986 (1979). However, the nonmoving party is obliged to produce some evidence other than mere pleadings themselves to demonstrate that there is a genuine issue for trial.

5:05 CV 0708                                          4

*Celotex Corporation v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must produce significant probative evidence in support of the complaint to defeat the motion for summary judgment through affidavits or admissions on file. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339-40 (6th Cir. 1993). In the final analysis, "the threshold inquiry . . . [is] whether there is a need for trial -- whether in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250; *Moore*, 8 F.3d at 340. Once the nonmoving party has responded , the court must view the facts in the light most favorable to the nonmoving party. *Darrah v. City of Oak Park,* 255 F.3d 301, 304 n.1 (6th Cir. 2001).

A private right of action is conferred to federal government employees under the Rehabilitation Act of 1973 in 29 U.S.C. §794(a)(1) which incorporates administrative procedures for claimed violations under 29 U.S.C. §791 for employment of individuals with disabilities. The statute incorporates by reference provisions requiring exhaustion of administrative process. The pertinent procedural regulation to this matter appears in 29 C.F.R. §1614.105 which is part of the "extensive dispute resolution process to address a federal employee's charge of discrimination." *Mitchell v. Chapman*, 343 F.3d 811, 816 n. 2 (6th Cir. 2003). "This dispute resolution system requires 'a complaining party to pursue administrative relief prior to court action, thereby encouraging more expedient, less formal, and less expensive resolution of disputes within the Federal Government and the outside of court.' *West v. Gibson*, 527 U.S. 212, 218-19, 119 S.Ct. 1906, 144 L.Ed.2d 196 (1999)." *Id.*

5:05 CV 0708                                              5

The U.S. Postal Service's Equal Employment Opportunity Compliance and Appeals office notice sent to Mr. Sims in Agency Case No. 1C-443-004-05 stated that Mr. Sims had requested precomplaint processing on September 7, 2004, and received "Notice of Right to File Individual Complaint of Discrimination" on February 10, 2005. Subsequent to that on February 15, 2005 Mr. Sims filed a formal complaint of discrimination with the agency. (Compl. Ex. B, Docket No. 1). The EEO dismissed the complaint relying on 29 C.F.R. §1614.105(a)(1) which reads:

> Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
>
> (1)  An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

29 C.F.R. §1614.105(a)(1).

The EEO also considered the subsequent provision under §1614.105(a)(2) which permits extension of the 45-day period when the aggrieved party was not notified or was otherwise unaware of the time restraints. The EEO Compliance and Appeals Office found that Mr. Sims provided no evidence that he was not aware of the time limit for contacting an EEO counselor that this information was posted at Mr. Sims' work site and Mr. Sims "has offered no evidence that would serve to persuade the agency to extend the time limits for contacting an EEOC Counselor in this case." Although Mr. Sims was notified in January 2004 of removal of employment, the EEOC notice rested on the final termination date of March 5, 2004 which was described as the "discrete act" in the notice. See *Horton v. Potter*, 396 F.3d 906, 910 (6th Cir. 2004) ("In the case of an

5:05 CV 0708                                               6

employee who claims to be the victim of a 'discrete discriminatory act,' the limitation period for bringing such charge begins to run from the date on which the act occurred."

"It is well-established that a party's exhausting of administrative process for filing a claim of discrimination is a condition precedent to filing suit in the district court, rather than a jurisdictional prerequisite." *Mitchell*, 343 F.3d at 819-20.  Further, the Sixth Circuit, "has held that a federal employee's administrative obligation to consult with an EEO counselor within a particular time period is a precondition to filing suit subject to equitable tolling, waiver and estoppel." *Id.* and see *Horton v. Potter*, 369 F.3d at 910; *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002).[1] And see 29 C.F.R. §1614.604(c) (providing that the time limits in this section are subject to waiver, estoppel and equitable tolling).

Equitable tolling requires the Court to consider several factors in assessing the reasonableness of a petitioner's ignorance of the requirement of timely filing.  See *Dunlop v. U.S.*, 250 F.3d 1001, 1008 (6th Cir. 2001), *cert. denied*, 534 U.S. 1057 (92001); *Roman v. Brigand*, 346 F.3d 598, 604-05 (6th Cir. 2003); *Allen v. Achaeans*, 366 F.3d 396, 401 (6th Cir. 2004), *cert. denied*, 125 S.Ct. 200 (2004).  "[The doctrine of equitable tolling allows a federal court to toll a statute of limitations when, 'a litigant's failure to meet a legally-motivated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Keenan v. Bagley*, 400 F.3d 417, 421 (6th Cir. 2005), quoting *Graham-Humphrey v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir.

---

[1] Posting of the EEOC process and the names and addresses of EEO counselors as well as the 45-day time limit is required in accordance with 29 C.F.R. §1614.102(b)(4).

5:05 CV 0708 7

2000). In determining whether to allow equitable tolling, the Court must consider the *Andrews* factors: petitioner's lack of notice of the filing requirement; petitioner's lack of constructive knowledge of the filing requirement; diligence in pursuing one's rights; absence of prejudice to the Respondent and the petitioner's reasonableness in remaining ignorant of the legal requirements for filing his claim. *Dunlap*, 250 F.3d at 1008.[2] However, "this list of factors is not necessarily comprehensive, and not all factors are relevant in all cases." *Vroman v. Brigano*, 346 F.3d at 605; *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004), *cert. denied*, 125 S.Ct. 200 (2004). Mr. Sims, though, bears the burden of establishing entitlement. See *Griffin v. Rogers*, 308 F.3d 647, 652 (6th Cir. 2002); *McClendon v. Sherman*, 329 F.3d 490, 492 (6th Cir. 2003); *Keenan*, 400 F.3d at 420. The five factors from *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988) are to be employed in considering whether equitable tolling should be allowed. See *Seay v. Tennessee Valley Authority*, 339 F.3d 454, 469 (6th Cir. 2003); *Seiden v. Potter*, 2004 WL 3741932*4 (E.D. Mich. 2004).

Mr. Sims is incorrect when he argues that summary judgment must be denied because the issue of equitable tolling is a matter for resolution by a jury. Equitable tolling is a matter of judicial discretion to employ in extraordinary circumstances. See *Dunlop v. U.S.*, 250 F.3d 1001, 1007 (6th Cir. 2001), *cert. denied*, 534 U.S. 1057 (2001).

Mr. Sims argues he is entitled to equitable tolling to excuse his nearly nine month delay due to mental disability. Mental incapacity or illness has been recognized as a basis for equitable tolling

---

[2] *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988).

5:05 CV 0708                                                                 8

in Rehabilitation Act matters under appropriate circumstances. *Nunnally v. McCausland*, 996 F.2d 1, 5 (1st Cir. 1993); *Boos v. Runyon*, 201 F.3d 178, 184 (2d. Cir. 2000); *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996); *Stoll v. Runyon*, 165 F.3d 12383, 11242 (9th Cir. 1999). The First and Seventh Circuits have developed specific tests for instances of mental incapacity or illness which include factors as inability to manage affairs or understand legal rights (*Miller*, at 191), or inability to engage in rational thought sufficient to pursue a claim alone or through counsel (*Nonnally*, at 5). The undersigned, though, sees no reason to depart from the practice of the Sixth Circuit in employing a generalized standard.

     Mr. Sims attempts to support his claim for equitable tolling with several exhibits beginning with the February 23, 2004 "Agreement to Participate in Redress, an Alternate Dispute Resolution Process" (Exhibit 1 to motion for judgment in favor of plaintiff, Docket No. 17). He states that he was "unable mentally to respond to the February 23, 2004 EEO Form 2567-B" (Motion to Defeat at 2, Docket No. 17). The only item missing from the paperwork are Mr. Sims' signatures on the agreement as "counselee." (See PS Form 2 567-B, Ex. 1 to Docket No. 17). Attached with the form for processing alternate dispute resolution is his counseling request information asserting discrimination for mental disability, retaliation and harassment and referring to his prior EEOC case. *Id.* He states with reference to the forthcoming March 5, 2004 removal date that he was in a psychiatric ward at Akron General Hospital when the firing took place. Also included is Medical Certification signed by a physician on January 13, 2004 and stating Mr. Sims suffered from depression with "no overt symptoms" and that he was formerly incapacitated from October 2002

5:05 CV 0708                                                                 9

through January 2003, but was capable of returning to work after that date (Medical Certification, Exhibit 2 to Motion for Judgment, Docket No. 17).

His third exhibit includes his January 2004 letter to his supervisor requesting a leave of absence for personal reasons so that he could continue his treatment for depression and suicidal ideation. He states that he was in the middle of treatment at the Brecksville VA Center when he was awarded his job back (in 2003) and now he wished to finish (Letter to Mr. Miller, Exhibit 3, Docket No. 17).

Following his removal on March 5, 2004 Mr. Sims filed a grievance with the president of the union local on May 27, 2004 stating he had medical documentation supporting his health condition and a life threatening condition which prevented him from filing a grievance in a timely manner (Exhibit 8, Docket No. 17). Mr. Sims includes the letter from union local president stating that he was first notified of filing a grievance on February 3, 2004 and Mr. Sims was told that the union local president would be available in the union hall and Mr. Sims had related that he didn't have a letter and was out driving around with a friend. (Exhibit 8 to Docket No. 17). The letter also states that Mr. Sims was "getting [his] own attorney and that [he] *purposely let the time limits expire*." (emphasis supplied) *Id.* (Letter from Dave Huffman, November 3, 2004, Exhibit 8, Docket No. 17).

5:05 CV 0708                                                                 10

Mr. Sims has also included the letter from the Cleveland area local from its president Joyce A. Williams dated December 27, 2004 stating that she reviewed the information and found that Mr. Sims failed to contact his union local within a timely manner and added

> You should also file an EEO complaint and state that due to your mental illness that you were unable to file within the time limits. Unless you can produce medical documentation stating that you were insane at the time in question as you stated you were, there is little hope of retrieving your job.  The documentation that you sent me does not support your contentions.

(Letter from Joyce Williams dated 12/27/2004, Exhibit 9 to Docket No. 17).

Ms. Williams' letter pinpoints the problem as had been discussed in pretrial.  Mr. Sims has not produced adequate medical documentation to show he suffered from mental disease.  In fact the documentation he produced as explained earlier showed no overt symptoms.  (See Medical Certification, Ex. 2, Docket No. 17).   Finally, in his motion to defeat summary judgment (Docket No. 19), Mr. Sims has released this medical information.  His Exhibit 2 to this motion consists of medical records from the Akron General Medical Center where he was admitted to Psychiatry and diagnosed with suicidal ideation, alcohol abuse and crack cocaine abuse. *Id.*  The report noted that Mr. Sims was scheduled to see a psychiatrist on the day of admission "but he was high on coke." (Discharge Summary, pg. 1-4, Exhibit 2, Docket No. 19).  A subsequent consultative report dated March 1, 2004 noted some improvement but reported Mr. Sims remained tired with poor concentration and poor memory.  At that time Mr. Sims was no longer having current suicidal ideation. He was discharged on March 8, 2004 (Discharge Summary pg. 1/1, Exhibit to Docket No. 19), with the diagnoses of depression with suicidal plans, dependent personality disorder, alcohol

5:05 CV 0708                                    11

abuse and cocaine abuse. *Id.* The discharge summary at pg. 2/4 noted that Mr. Sims had been thrown out of his house and was homeless and living on the streets. He had been attempting to run in front of cars to kill himself and it noted he had three prior psychiatric hospitalizations in the past three-and-a-half years. He was provided with medication and referred for aftercare. *(Id.,* and see Homegoing Instructions pg. 1/1). The final medical note was that he was to schedule an appointment with his psychiatrist on March 11, 2004 (See Homegoing Instructions, pg. 1/1). There are no medical records after that date.

This evidence shows that Mr. Sims has suffered some degree of mental impairment for a prolonged period of time yet he has been capable of working at his job. There was chronic impairment during late February and early March 2004 brought on by substance abuse. After detoxification and treatment Mr. Sims was released on March 8, 2004.

Obviously since Mr. Sims had completed the paperwork for counseling and alternate dispute resolution in February 2004, he was aware of the time restraint and the administrative requirements in addition to the facts noted by the EEO notification. Further, Mr. Sims has failed to demonstrate that the failure to meet the deadline was due to a situation that "unavoidably arose from circumstances beyond the litigant's control." See *Keenan*, 400 F.3d at 421. Mr. Sims has shown that his mental incapacity was self-induced. He cannot show an absence of prejudice to his employer because he believes that he was the object of a conspiracy to replace him with a lower-paid non-unionized employee and as he claims, most likely his job did not remain vacant after his removal from employment (Motion, docket No. 21) Finally he has not shown diligence because he

5:05 CV 0708                                                                                          12

had attempted to seek reinstatement through his union near the time the counseling process should have been initiated. Also Mr. Huffman's letter to Mr. Sims stating that Mr. Sims had "purposely let the time limits expire" is extremely detrimental to Mr. Sims' argument for equitable tolling. Mr. Sims has not justified any reason to excuse his untimely action.

### *CONCLUSION AND RECOMMENDATION*

For the foregoing reasons, it is recommended that the defendant's motion to dismiss be denied (Docket No. 12), but that the defendant's motion for summary judgment be granted (Docket No. 12). Further it is recommended that Mr. Sims' motions for a decision in his favor be denied (Docket Nos. 14, 17, 19, 21).

s/James S. Gallas
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Dated: September 15, 2006